```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/14/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Tian Xi Yang,

                            Plaintiff,

-against-

Shanghai Heping Restaurant Inc. et al.,

                            Defendants.

1:20-cv-00815 (JGK) (SDA)

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE:**

By Order dated October 26, 2020, the Court granted Plaintiff's motion for a default judgment in this wage-and-hour suit brought under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") (Order of Reference, ECF No. 39), and this case was referred to me for an inquest on damages. For the reasons set forth below, I recommend that the Court enter judgment against Defendants as set forth in the Conclusion below.

## BACKGROUND

### I. Established Facts As A Result Of Defendants' Default[1]

Defendant Shanghai Heping Restaurant, Inc. (the "Restaurant") is a New York corporation, with a principal place of business at 104 Mott Street, New York, New York 10013. (Compl., ECF No. 2, ¶ 10.) Defendants Sai Ching Chan ("Chan") and Sou Qin Chen ("Chen") (together, the

---

[1] In light of Defendants' default, the Court is required to accept all of Plaintiff's allegations as true, except for those pertaining to damages. *See, e.g., Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

"Individual Defendants") are the officers, directors, shareholders and proprietors of the Restaurant.[2] (Compl. ¶¶ 8-9; Yang. Decl., ECF No. 72, ¶ 7.)

Plaintiff Tian Xi Yang ("Plaintiff" or "Yang") was employed by the Defendants. (Compl. ¶¶ 6-7, 38-42; Yang Decl. ¶¶ 5-6, 8-12.) The Individual Defendants controlled, supervised and directed Yang with respect to the work that he performed, including by controlling the conditions of his employment; setting the rate at which he would be paid; setting the days and hours of his work; and directing him with respect to the particular tasks that he performed. (Compl. ¶¶ 8-9, 16; Yang Decl. ¶ 18.)

Yang commenced working for the Defendants on June 1, 2014 as a waiter/server and his employment continued in this capacity until August 31, 2019. (Compl. ¶¶ 38-42; Yang Decl. ¶¶ 5-6.) Yang's position was a tipped position, but at no time was Yang ever informed by the Defendants that he would not be paid the standard minimum wage and overtime, because he was receiving tips. (Compl. ¶¶ 31, 34, 36; Yang Decl. ¶¶ 19-20.)

During the period June 2014 through August 2019, Yang worked the following hours per week during the specified periods: (1) from June 1, 2014 through December 31, 2018, he worked 68 hours per week (*i.e.*, from 11 a.m. to 10 p.m. four days a week and from 11 a.m. to 11 p.m. on Fridays and Saturdays);  and (2) from January 1, 2019 through August 31, 2019, he worked 57 hours per week (*i.e.*, he worked from 11 a.m. to 10 p.m. three days a week and from 11 a.m. to 11 p.m. on Friday and Saturday). (Compl. ¶¶ 40-42; Yang Decl. ¶¶ 9-10.)

---

[2] The Restaurant and the Individual Defendants collectively shall be referred to herein as the "Defendants."

Yang's wages were fixed at $308.49 paid every two weeks. (Yang Decl. ¶ 11; Sample Paychecks, ECF No. 44.) In addition, he was required to "kick back" to the defendants $68.00 every two weeks. (Yang Decl. ¶ 12.) Thus, Yang was paid a net amount of $240.49 every two weeks, which equates to $120.25 a week for a work week that ranged from 57 to 68 hours per week. (*See id*. ¶¶ 11-12, 22.) Yang never was provided with a pay stub showing the days that he worked, the number of hours that he worked, his regular and overtime pay rates, and his gross and net wages for each day he worked. (Compl. ¶¶ 32, 94; Yang Decl. ¶ 21.)

**II.    Procedural History**

The Complaint in this action was filed on February 3, 2020, but due to a filing error was refiled on February 26, 2020. (*See* ECF Nos. 1, 2.) On June 22, 2020, the Complaint was served upon the Restaurant. (6/22/20 Aff. of Service, ECF No. 17.) Service upon Defendants Chen and Chan was completed on July 20, 2020. (7/21/20 Affs. of Service, ECF Nos. 21, 22.)

After Defendants failed to appear in and/or defend this action, the Clerk of Court entered a Certificate of Default against the Restaurant on August 18, 2020 (8/18/20 Cert. of Default, ECF No. 26) and a Certificate of Default against the Individual Defendants on August 24, 2020. (8/24/20 Cert. of Default, ECF No. 29.) Thereafter, on October 26, 2020, District Judge Koeltl entered a Default Judgement against Defendants, and referred this action to me for an inquest on damages. (10/24/20 Order, ECF No. 38.)

On November 17, 2020, Plaintiff filed Proposed Findings of Fact and Conclusions of Law ("Proposed Findings and Conclusions") and supporting documents. (*See* ECF Nos. 41-48.) Defendants' response was due no later than December 30, 2020 (*see* Inquest Scheduling Order, ECF No. 40), but no response was filed.

**DISCUSSION**

**I.      Burden Of Proof**

Since a default judgment has been entered in Plaintiff's favor, the only remaining issue is the amount of damages to which he is entitled. Plaintiff bears the burden of establishing his entitlement to recovery and thus must substantiate his claims with evidence to prove the extent of his damages. *See*, *e.g.*, *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Although the Court may hold a hearing to assess damages, a hearing is not required when a sufficient basis on which to make a calculation exists. *See* Fed. R. Civ. P. 55(b)(2); *see also Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC,* 779 F.3d 182, 189 (2d Cir. 2015) (quoting *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)*)*. Indeed, the Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (citation omitted). Here, I rely on Plaintiff's Declaration, which contains the required evidentiary basis, to determine Plaintiff's damages.

An employee seeking to recover unpaid wages has the burden of proving that he performed work for which he was not properly compensated. *See Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-07777 (JGK) (JLC), 2012 WL 3578781, at *3 (S.D.N.Y. Aug. 2, 2012). An employer is required to maintain "records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . .." 29 U.S.C. § 211(c); *see also* 12 N.Y. Compilation Codes R. & Regs. ("NYCRR") § 142-2.6. Absent such documentation, an

4

employee may establish his right by relying on his recollection alone. An affidavit or declaration that sets forth the number of hours worked is sufficient. *See Angamarca*, 2012 WL 3578781, at *3.

Once an employee has presented his evidence, an employer may then "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Angamarca*, 2012 WL 3578781, at *4 (internal citations and quotations omitted). "If the employer fails to do so, the court may enter judgment in the employee's favor, using her recollection to determine damages, even though the result be only approximate." *Id.* Because Defendants have defaulted, Plaintiff's representations as to the dates and hours he worked will be credited and his damages calculated on that basis.

**II.     Statutes Of Limitations**

Plaintiff asserts claims under both the NYLL and the FLSA. The statute of limitations under the NYLL is six years and under the FLSA is two years (or three years if an employer acted willfully). *See* NYLL § 663(3); 29 U.S.C. § 255(a). Plaintiff may not recover under both the NYLL and the FLSA for the same injury, but he is entitled to recover damages under the statute that provides him the greatest relief. *See Angamarca*, 2012 WL 3578781, at *4. Here, the NYLL six-year statute of limitations provides Plaintiff the greatest relief. Since the start date of Plaintiff's employment, *i.e.*, June 1, 2014, falls within the NYLL six-year statute of limitations, his damages will be calculated beginning as of June 1, 2014.

**III.     Unpaid Minimum And Overtime Wages And Spread Of Hours Pay**

    **A.  Legal Standards For Entitlement**

State and federal law require employers to pay to employees at least a minimum hourly rate for every hour they work. *See* 29 U.S.C. § 206(a); 12 NYCRR § 146-1.2. In June 2014, the relevant minimum hourly wage in New York was $8.00 per hour; it increased to $8.75 per hour on December 31, 2014; to $9.00 per hour as of December 31, 2015; to $10.50 per hour as of December 31, 2016; to $12.00 per hour as of December 31, 2017; and to $13.50 per hour as of December 31, 2018. 12 NYCRR § 146-1.2.[3]

Under the FLSA, employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours in a week. *See* 29 U.S.C. § 207(a)(1). New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular rate for each hour over forty hours worked in a week. *See* 12 N.Y.C.R.R. § 142-2.2. In cases where the regular rate is less than minimum wage, overtime is calculated by multiplying the statutory minimum wage by 1.5. *See Baltierra v. Advantage Pest Control Co.*, No. 14-CV-05917 (AJP), 2015 WL 5474093, at *5 (S.D.N.Y. Sept. 18, 2015).

Under New York law, employees also are entitled to receive "spread of hours" compensation, equaling an extra hour's pay at the regular minimum wage for each day they work more than ten hours. *See* 12 NYCRR § 146-1.6; *see also Angamarca*, 2012 WL 3578781, at *6.

---

[3] Because Defendants never advised Plaintiff that he would be paid less than the minimum wage as a result of his receiving tips (Compl. ¶¶ 34, 39; Yang Decl. ¶ 19), Defendants are not entitled to a "tip credit" against their obligation to pay Plaintiff the full applicable minimum wage. *See* 29 U.S.C. § 203(m); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3; *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287-91 (S.D.N.Y. 2011).

6

Because Defendants failed to pay Plaintiff any spread-of-hours compensation, he is entitled to reimbursement for the days he worked in excess of ten hours.

### B. Plaintiff's Minimum And Overtime Wages And Spread Of Hours Pay

Throughout his employment with Defendant, Plaintiff was not paid the minimum wage. Moreover, he was not paid overtime at the rate of one-and-a-half times his regular rate, which in this case was the statutory minimum wage. Rather, as set forth above, Plaintiff received a fixed weekly rate throughout his employment with Defendants that did not vary depending on whether he had worked in excess of forty hours in a given week.

Where an employee receives a straight weekly salary, there is a rebuttable presumption under the FLSA that their salary covers 40 hours worked. *See Cabrera v. New York Fresh Meat Inc.*, No. 15-CV-01325 (JGK) (SDA), 2018 WL 3300647, at *6 (S.D.N.Y. Mar. 29, 2018), *report and recommendation adopted*, 2018 WL 2192187 (S.D.N.Y. May 14, 2018). Thus, here, the Court presumes that Plaintiff was paid $3.00 per hour (*i.e.*, $120 per week divided by 40).[4]

Plaintiff submitted to the Court a spreadsheet that reflects the amounts of minimum and overtime wages, as well as spread of hours pay, that Plaintiff contends are due to him.[5] (*See* Stmt. Of Damages, ECF No. 43.) The Court finds the calculations set forth in Plaintiff's spreadsheet with

---

[4] As discussed further at note 7 *infra*, the Court adopts from Plaintiff certain uses of number-rounding where the impact to the ultimate dollar figures is negligible (*e.g.*, rounding $120.25 down to $120).

[5] At the Court's request, Plaintiff's counsel also provided the Court with a native Excel version of the spreadsheet.

7

respect to minimum wages and spread of hours pay to be sound.[6] Thus, Plaintiff is entitled to the sum of $79,308.80 in minimum wages and $16,342.86 in spread of hours pay.[7]

On review of Plaintiff's calculation of overtime wages due, however, the Court finds that Plaintiff shortchanged himself by nearly $22,000. Plaintiff calculates overtime wages due for each relevant period by (i) multiplying the statutory minimum wage for that period by 1.5 to arrive at the statutory overtime rate; (ii) deducting $3.00 per hour (corresponding to Plaintiff's hourly wage, as discussed above) from that statutory overtime rate; (iii) multiplying the resulting rate by the number of hours in excess of 40 hours that Plaintiff worked per week during that period; and (iv) multiplying that weekly amount due by the number of weeks in that period. However, the second step of this process—the deduction of $3.00 from the statutory overtime rate calculated in the first step—is unwarranted. The $3.00 figure that Plaintiff and the Court are using to represent Plaintiff's hourly wage has been calculated under the presumption that Plaintiff's weekly wages corresponded to a 40-hour workweek (hence, $3.00 an hour: $120 divided by 40). Under this presumption, Plaintiff did not receive $3.00 per overtime hour he worked (which is

---

[6] Plaintiff calculated the minimum wages due by deducting $3.00 per hour (based upon the presumption discussed in the text above) from the statutory minimum wage for each relevant period and then multiplying by 40 hours per week. Since Plaintiff worked more than 10 hours each day, Plaintiff calculated the spread of hour pay due by multiplying the number of days he worked in each relevant period by the statutory minimum wage corresponding to that period.

[7] The Court notes that Plaintiff employed certain approximations in the numbers he plugged in to his calculation of wages due. For example, in arriving at $3.00 as the hourly wage he received, Plaintiff rounds down from $3.006125 (which would be the precise result of dividing his $240.49 in biweekly wages by 80 hours). He also rounds down when determining the number of weeks contained within several of the relevant pay periods—for example, treating the period from January 1, 2015 through December 31, 2015, inclusive, as comprising 52 weeks, rather than 52.143 weeks (*i.e.*, 52 weeks and one day). However, because these approximations cut in opposite directions (*i.e.*, rounding down $3.006125 to $3.00 increases Plaintiff's recovery, but rounding down 52.143 weeks to 52 weeks decreases his recovery), and because the net impact is both negligible and slightly in Defendant's favor, the Court in its discretion declines to further scrutinize the approximations Plaintiff employs and instead adopts them.

what Plaintiff's calculations imply); rather, Plaintiff received *nothing* for any of the overtime hours he worked. Accordingly, his overtime wages due for each relevant period should be calculated simply by multiplying (i) 1.5 times the minimum wage for that period, times (ii) the overtime hours Plaintiff worked per week during that period, times (iii) the number of weeks in that period. This calculation results in a total of $109,983.09 in overtime wages due, an increase of $21,783.72 over Plaintiff's calculated total.

Accordingly, Plaintiff is entitled to the sum of $79,308.80 in minimum wages, $109.983.09 in overtime wages, and $16,342.86 in spread of hours pay, for a total of $205,634.75.

**IV.     Liquidated Damages**

Although Plaintiff notes that he would be entitled to liquidated damages under both the FLSA and the NYLL, he only seeks liquidated damages under the NYLL. (Proposed Findings and Conclusions at 13.)[8] The NYLL entitles Plaintiff to liquidated damages since Defendants' wage violations were "willful." NYLL §§ 198(1-a), 663(1). NYLL § 663(1) provides that Plaintiff is entitled to "liquidated damages equal to one hundred percent of the total of such underpayments found to be due." Plaintiff is entitled to liquidated damages on the total amounts of unpaid minimum and overtime wages and spread of hours pay under the NYLL in an amount equaling 100% of the total amount due. Thus, the Court finds that Plaintiff is entitled to liquidated damages under the NYLL in the amount set forth above, *i.e.*, $205,634.75.

---

[8] In *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59 (2d Cir. 2016), a non-precedential panel opinion of the Second Circuit refused to permit an award of liquidated damages under both the FLSA and the NYLL for the same violation, because it would amount to "double recovery." *Id*. at 60-61. Plaintiff is not seeking such a double recovery in this case.

**V.   Wage Notice And Statement Violations**

Plaintiff seeks to recover damages for Defendants' failure to provide regular wage statements and annual wage notices as required by NYLL §§ 195(1), 195(3). (Proposed Findings and Conclusions at 13.) Since Plaintiff did not receive wages notices or statements, he is entitled to statutory damages in the maximum amount of $5,000.00 under each section, for a total of $10,000.00. *See Cabrera v. New York Fresh Meat, Inc.*, 2018 WL 3300647, at *7-8.

**VI.   Pre-Judgment Interest**

Plaintiff seeks pre-judgment interest on his NYLL claims for unpaid overtime. Plaintiff is entitled under New York law to pre-judgment interest at the statutory rate of 9% per year. *See* N.Y. C.P.L.R. §§ 5001, 5004. Pre-judgment interest applies only to the amount of compensatory damages and excludes the amount of liquidated damages. *See Angamarca*, 2012 WL 3578781, at *9. Where unpaid wages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). I recommend that pre-judgment interest be calculated by applying the statutory interest rate to the entire principal amount due under the NYLL, beginning on such an "intermediate date" and running up until and including the date judgment is entered. *See Angamarca*, 2012 WL 3578781, at *9.

Plaintiff was employed by Defendants from June 1, 2014 through August 31, 2019. The midpoint of this period is January 14, 2017. Therefore, I recommend that pre-judgment interest start to run on January 14, 2017 on the sum of $205,634.75 (*i.e.*, the amount of unpaid wages, unpaid overtime and unpaid spread of hours payments). Pre-judgment interest should be calculated up to the date of the entry of judgment.

**VII.     Attorneys' Fees and Costs**

Plaintiffs seek $36,222.59 in attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198(1-a), 663(1). (Proposed Findings and Conclusions at 14.) Under the FLSA and NYLL, a prevailing party in an employment dispute is entitled to recover reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b); NYLL §§ 198(1-a), 663. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).

While a district court retains discretion to determine what constitutes a reasonable fee, "this discretion is not unfettered." *Millea v. Metro-North R.R. Co*., 658 F.3d 154, 166 (2d Cir. 2011). "[W]hen a prevailing party is entitled to attorneys' fees, the district court must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." *Id*. "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Id*. (citations omitted). This approach is intended to "produce[] an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (citations and emphasis omitted); *see also Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289-90 (2d Cir. 2011) ("A reasonable hourly rate is what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.") (internal quotation marks and citations omitted).

A reasonable rate is generally the "prevailing market rate[] for counsel of similar experience and skill to the fee applicant's counsel." *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). In deciding what constitutes a reasonable rate, a court may consider "rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Id*. "The relevant community to which the court should look is the district in which the case was brought." *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000).

In calculating the reasonable number of hours expended "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). In addition, "[c]ourts regularly reduce the rate billed by attorneys for work done on administrative or clerical tasks," and "[a]ttorneys engaged in clerical tasks should be compensated at the rate for clerical employees, or, if the task at issue is the type included in overhead, they should not be compensated at all." *Shabazz v. City of N.Y.*, No. 14-CV-06417, 2015 WL 7779267, at *4 (S.D.N.Y. Dec. 2, 2015) (internal quotation marks omitted).

### A. Reasonable Hourly Rates

The Law Office of Stephen K. Seung represents Plaintiff. Plaintiff stated in his Proposed Findings and Conclusions that he seeks to recover fees for work performed by Stephen H. Marcus and Perry Burkett.[9] (Proposed Findings and Conclusions at 14.) Plaintiff seeks reimbursement for their work at a rate of $285 per hour. (*See id*.) Marcus and Burkett were admitted to practice law in the State of New York in 1968, and between them they have handled numerous wage suits

---

[9] The billing statements also reflect work done by "SKS," which is discussed in Discussion Section VII.B., *infra*.

brought under FLSA and NYLL. (*See id*.) Plaintiff also seeks to recover fees for work performed by Jiang Zhu, who is a public accountant associated with the law firm with ten years' experience. (*See id*. at 15.) Zhu prepared the spreadsheet supporting Plaintiff's damages calculations. (*See id*.) Plaintiff seeks reimbursement for his work at a rate of $100 per hour. (*See id*.)

Having considered all the facts and circumstances, the Court finds that the attorney hourly rates are reasonable.[10] *See Lujuan v. JPG LLC*, 18-CV-0916 (KBF), 2018 WL 3353060, at *2 (S.D.N.Y. June 6, 2018) ("Lead attorneys in this district typically charge between $300 and $400 per hour for wage-and-hour cases."(citations omitted)); *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-00461, 2014 WL 4207106, at *14 (S.D.N.Y. Aug. 20, 2014) ("Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases."). The Court also finds that the $100 hourly rate for Zhu's work is reasonable, given that it is in the nature of paralegal work. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-01906 (HBP), 2015 WL 4006896, at *8 (S.D.N.Y. July 1, 2015) ("In recent FLSA actions, hourly rates between $100 and $125 for paralegal work have been found to be reasonable.").

### B. Reasonable Hours Expended

Having determined that the hourly rates are reasonable, the Court next examines the hours reasonably expended. Plaintiff has submitted copies of billing statements setting forth the hours worked (Billing Statements, ECF No. 45),[11] which the Court has reviewed.

The Court recommends that the following adjustments be made:

---

[10] However, as set forth below, I find that the hourly rate for administrative and/or clerical work done by Marcus and Burkett should be reduced to $100 per hour. *See* Discussion Section VII.B., *infra*.

[11] One of the relevant billing statements was missing from the billing statements filed by Plaintiff and separately was filed at the Court's request on January 6, 2021. (*See* Suppl. Billing Statement, ECF No. 49.)

(1) In addition to time entries by Marcus, Burkett and Zhu, the billing statements contain entries by "SKS" at an hourly rate of between $295 and $300. (*See* Billing Statements at PDF pp. 2, 4, 14; Supp. Billing Statement at PDF p. 2.) The Court assumes that this individual is Stephen K. Seung, since Plaintiff's counsel of record is the Law Office of Stephen K. Seung. The Court finds that no reasonable client would agree to pay for the services of three attorneys on a case of this kind. Rather, the time entries for "SKS" are redundant and/or unnecessary. By way of example, between November 5, 2019 and November 30, 2019, by which time Burkett had spent more than ten hours preparing the Complaint, "SKS" recorded entries of .67, 1.92 and 2.33 for reviewing the "file," some unspecified "document" and the Complaint. (*See id*. at PDF p. 2.) I recommend that the time entries for "SKS," which total $2,237.09, be excluded from the fee award in this case.

(2) Certain of the time entries by Marcus and Burkett related to administrative and/or clerical tasks, and the hourly rates for the following entries should be reduced to $100:

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 1/29/2020 | Burkett | Trip to Court, begin efiling FLSA complaint. | 3.50 |
| 1/30/2020 | Burkett | E-file FLSA complaint. | 1.00 |
| 2/5/2020 | Marcus | Attempt to efile [complaint] for PB, [assist] PB in filing documents. | 1.30 |
| 2/5/2020 | Burkett | Complete drafting civil cover sheet and summons. | 1.00 |
| 2/13/2020 | Burkett | Trip to clerk office, and phone call and email with PACER. | 1.00 |
| 2/18/2020 | Marcus | Attempt to efile complaint. | 0.30 |
| 2/18/2020 | Burkett | Phone call to central pacer. | 0.50 |
| 3/5/2020 | Burkett | Telephone conference with Pacer, file summons and notice of appearance. | 1.50 |

| Date | Timekeeper | Description | Hours |
|---|---|---|---|
| 3/11/2020 | Burkett | Assembled summon[s] and complaint, correction to complaint, letter to United process service. | 1.50 |
| 10/2/2020 | Marcus | Review PACER procedure for filing affidavit of service; draft affidavit of service; arrange for execution of affidavit; tel, email to TC re same. | 1.30 |
| Total | | | 12.90 |

Reducing the hourly rate for the 12.9 hours reflected in the chart above from $285 to $100 reduces the amount of Plaintiff's attorneys' fees by $2,386.50 (*i.e.*, 12.9 times $185).

(3) On February 5, 2020, there are two virtually identical entries by Burkett for drafting the civil cover sheet and summons. One entry is for one hour (see chart above) and a second entry is for five hours. (*See* Billing Statements at PDF p. 6.) This second entry should not be compensable because it is redundant of the first and because it should not take five hours to complete a civil cover sheet and summons. Excluding this entry results in a reduction of Plaintiff's attorneys' fees by $1,425.00 (*i.e.*, 5 times $285).

(4) On June 30, 2020, Marcus billed five hours for "[d]raft[ing a] letter motion for extension of time to serve process." (Billing Statements at PDF p. 10.) The letter motion in question is three pages in length and contains three exhibits. (*See* 7/1/20 Ltr. Mot., ECF No. 19.) The Court finds the hours billed to prepare the Letter Motion excessive. Thus, the Court reduces the June 30 entry by four hours, which results in a reduction of Plaintiff's attorneys' fees by $1,140.00 (*i.e.*, 4 times $285).

### C. Costs

Finally, Plaintiff seeks recovery of his costs. (*See* Proposed Findings and Conclusions at 16.) Pursuant to the NYLL, an employee who prevails in a wage-and-hour action is entitled to recover costs. NYLL § 663(1).

The costs that the Court finds supportable on the record before it consist of the $400.00 "Court Fee" corresponding to the filing of the Complaint[12] (*see* Billing Statements at PDF pp. 4, 6; *see also* ECF No. 1) and the $335.47 service of process fee. (*See* Billing Statements at PDF p. 12.) Therefore, the Court should award Plaintiffs $735.47 in costs.

*     *     *

The total amount sought by Plaintiff for attorneys' fees and costs is $36,222.59.[13] (*See* Proposed Findings and Conclusions at 15.) This amount is based upon the total "balance due" as reflected in the final billing statement. (*See* Billing Statements at PDF p. 16.) To arrive at the amount to be awarded, the reductions above should be applied (*i.e.*, reduction of $2,237.09 for "SKS" entries, $2,386.50 for administrative and/or clerical tasks, $1,425.00 for redundant time entry, $1,140.00 for excessive billing and $400.00 for unidentified court fee). In addition, the Billing Statements reflect interest charges based upon "overdue balance[s]," which interest charges total $1,717.53. (*See* Billing Statements at PDF pp. 2-4, 6, 8, 10, 12, 14-15; *see* Suppl.

---

[12] Plaintiff's billing statements list two $400.00 "Court Fee[s]"—the first dated January 27, 2020, and the second dated February 3, 2020. (*See* Billing Statements at PDF pp. 4, 6.) However, no description of the nature of either of these fees is provided, and there is evidence of only one $400 fee on the ECF docket. (*See* docket description corresponding to ECF No. 1 ("Filing Fee $ 400.00").) The Court thus recommends that the second Court Fee be excluded from recoverable costs.

[13] Although Plaintiff's damages spreadsheet lists attorneys' fees in the amount of $36,222.59 and separately lists costs (*see* Stmt. Of Damages), it is clear from the billing statements that the $36,222.59 is inclusive of costs.

Billing Statement at PDF p. 2.) No legal basis is provided by Plaintiff for the inclusion of these charges and the Court finds none. Thus, the amount sought by Plaintiff also should be reduced by $1,717.53. After applying the foregoing reductions, the Court finds that Plaintiff should recover $26,916.47 in attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, I recommend that the Court enter judgment in favor of the Plaintiff against Defendants in the amount of $421,269.50 (consisting of $79,308.80 in unpaid minimum wages, $109,983.09 in overtime wages, $16,342.86 in spread of hours pay, $205,634.75 in liquidated damages and $10,000.00 for wage notice and statement violations). I further recommend as follows: (1) Pre-judgment interest should be awarded as set forth in Discussion Section VI above; and (2) Plaintiff should be awarded $26,916.47 in attorneys' fees and costs.

No later than January 15, 2021, Plaintiff's counsel shall mail copies of this Report and Recommendation to Defendants at the addresses set forth in Plaintiff's Declaration of Service (ECF No. 48) and promptly thereafter shall file proof of service.

Dated:    New York, New York
          January 14, 2021

_____
**STEWART D. AARON**
**United States Magistrate Judge**

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Koeltl.

**THE FAILURE TO FILE THESE TIMELY OBJECTIONS WILL RESULT IN A WAIVER OF THOSE OBJECTIONS FOR PURPOSES OF APPEAL.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).